**Dated: October 31, 2018**
**The following is ORDERED:**



_____
**Jennie D. Latta**
**UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRCT OF TENNESSEE
## WESTERN DIVISION

---

In re
LARRY PARK CHINN,                                    Case No. 17-30912-L
    Debtor.                                           Chapter 7

---

## ORDER GRANTING MOTION TO APPROVE
## COMPROMISE AND SETTLEMENT

---

BEFORE THE COURT is the motion of Bettye S. Bedwell, Trustee in Bankruptcy (the "Trustee") to approve a compromise and settlement of litigation styled _Wood Gutmann & Bogart Insurance Brokers v. Chinn_ pursuant to Federal Rule of Bankruptcy Procedure 9019. The complaint in that litigation alleges that the Debtor, Larry Park Chinn, and his company, Financial Institution Consulting Corporation ("FICC"), are guilty of fraud, breach of contract, and negligence. The plaintiffs seek actual and punitive damages. Wood Gutmann & Bogart and the other plaintiffs have filed a proof of claim in this bankruptcy case in the amount of $7,250,000. The Debtor and FICC have filed an answer and counterclaim alleging breach of contract, fraud, and negligent misrepresentation. No objection has been filed to the proof of claim. The Trustee proposes to settle the lawsuit for payment to the plaintiffs of $400,000 to be made solely from an

insurance policy issued by American Automobile Insurance Company ("AAIC"), which has been providing defense for the Debtor and FICC. In exchange, Wood Gutmann & Bogart and the other plaintiffs have agreed to waive their claim against the bankruptcy estate. Objections to the Trustee's motion were filed by Pacific Mercantile Bank ("PMB"), Pacific Life Insurance Company ("PLIC"), and Minnesota Life Insurance Company ("MLIC"). The court conducted a hearing on August 23, 2018. The only testimony offered was that of the Trustee. At the conclusion of the hearing, the court invited the parties to file post-hearing briefs.

PMB, styling itself a "contingent creditor and interested party," asserts that it has status to object by virtue of a proof of claim that it filed in the amount of $0.00. Attached to the proof of claim is the *Wood Gutmann & Bogart* complaint. No other explanation is given as to PMB's interest in the pending bankruptcy case. Nevertheless, PMB objects that the proposed settlement is not in the best interest of the creditors of the bankruptcy estate because it favors one unsecured claimant over all others. PMB claims that the proceeds of the Debtor's liability insurance policy are assets of the bankruptcy estate: "The resolution of this contested matter depends, then, upon whether the insurance proceeds are property of the estate as that term is defined in 11 U.S.C. § 541(a)." *Post Hearing Memorandum of Law in Support of Pacific Mercantile Bank's Objection to Motion to Approve Compromise and Settlement,* Dkt. No. 185. Significantly, PMB has proffered no theory pursuant to which it would be a beneficiary of the insurance policy.

PLIC and MLIC also filed objections to the Trustee's motion, but declined the court's invitation to file post-hearing briefs. Although both of them have filed significant proofs of claim against the bankruptcy estate, neither of them asserts a theory pursuant to which it would have a claim against the insurance policy.

2

The parties agree that jurisdiction and venue of this contested matter are established.  The determination of whether to approve compromises of claims by the estate and settlements of claims against the estate fall within the core proceedings that a bankruptcy judge may hear and finally determine.  *See* 28 U.S.C. § 157(b)(2)(A) and (B).

In support of its contention that the proceeds of the Debtor's liability policy are proceeds of his bankruptcy estate available to pay claims other than intended beneficiaries of the policy, PMB points to the decision of the Court of Appeals for the Fifth Circuit, *Martinez v. OGA Charters, L.L.C. (In re OGA Charters, L.L.C.),* 901 F.3d 599 (5th Cir. 2018), which was decided the day after the hearing in this case.  Not only does *Martinez* not represent precedent for this court, but the facts of *Martinez* are substantially different from those in the present case.  The pertinent facts are as follows:

> In May 2016, a bus owned by OGA Charters, LLC, rolled over while on its way to the Kickapoo Lucky Eagle Casino in Eagle Pass, Texas.  The single-vehicle crash killed nine passengers and injured more than 40 others.  The accident gave rise to personal-injury, wrongful-death, and survival claims against OGA.  However, OGA owned only two busses and had limited resources.  As is often the case, the search for assets began.
>
> Through New York Marine & General Insurance Company ("NYM"), OGA owned an insurance policy that provided $5 million in liability coverage for "covered autos."  The policy also provided collision and comprehensive coverage.  A small group of victims and their representatives (the "Settled Claimants") quickly entered into settlements with NYM that – if valid and enforceable – would exhaust the $5 million in liability coverage.  Less than two months after the accident, the victims without settlements (the "Unsettled Claimants") filed an involuntary bankruptcy petition against OGA.  The Unsettled Claimants also initiated an adversary proceeding against OGA and NYM.  The Settled Claimants intervened in the adversary proceeding, and the bankruptcy court preliminarily enjoined NYM from paying out any policy proceeds.
>
> Following the appointment of a Chapter 7 trustee, the parties filed cross-motions for summary judgment, disagreeing over whether the proceeds of the insurance policy were property of the bankruptcy estate under 11 U.S.C. § 541(a).  The bankruptcy court granted summary judgment in favor of the Trustee and Unsettled Claimants, ruling that the proceeds were property of the estate.  The Settled

Claimants sought a direct appeal to this court, and the bankruptcy court certified
the following question under 28 U.S.C. § 158(d)(2):

> Are proceeds of a debtor-owned liability insurance policy property
> of the debtor's bankruptcy estate when: (1) the policy covers the
> debtor's liability to third parties; (2) the debtor cannot make a legally
> cognizable claim against the policy; and (3) the claims by third
> parties exceed the coverage limits of the policy[?]

The Settled Claimants argue that the policy proceeds are not property of the estate,
meaning they should be allowed to recover the full $5 million despite OGA's
pending bankruptcy proceedings. Conversely, the Unsettled Claimants argue that
the proceeds should be subjected to the bankruptcy court's process of equitable
distribution amongst creditors. The claims against OGA's estate exceed
$400,000,000. Other than the accident victims and their representatives, OGA has
one other creditor, with a claim for less than $9,000.

*Martinez,* 901 F.3d at 603-04.

The dispute in *Martinez* involved parties with claims against a liability insurance policy.
Some of them had already received payment before the bankruptcy case was filed. Others had not.
Because of the policy limits, it did not appear that all potential claimants could be paid from the
insurance policy and thus that there would be claims against the bankruptcy estate. Under these
circumstances, the trustee in bankruptcy sought to administer the insurance proceeds for the benefit
of all creditors with potential claims against the policy, both those who had reached settlements
before the bankruptcy case was filed and those who had not.

The decision of the Fifth Circuit starts with the description of property of the estate set out
at section 541(a) of the Bankruptcy Code: "The commencement of a case under … this title creates
an estate. Such estate is comprised of … all legal or equitable interests of the debtor in property
as of the commencement of the case." 11 U.S.C. § 541(a)(1). The court notes the distinction in
treatment of insurance *policies* owned by a debtor, which clearly become property of his
bankruptcy estate, as opposed to insurance *proceeds* of policies owned by a debtor, which usually
do not. *Martinez*, 901 F.3d at 602. After reviewing its prior decisions, the court framed the issue

4

as "whether … liability policy proceeds are property of the estate when the policy limit is insufficient to cover a multitude of tort claims." *Id.* at 603. With little additional discussion, the court announced that "in the 'limited circumstances,' as here, where a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate." *Id.*at 604. The court makes clear that the purpose of bringing the proceeds into the estate is to "oversee the allocation of the proceeds among claimants [to the policy]," quoting 3 COLLIER ON BANKRUPTCY, ¶ 362.03 (16th ed.), which goes on to say: "Although the policy proceeds are not available to all creditors, and in that sense are different from other property of the estate, they may be available to a class of creditors whose claims are covered by insurance, and may be insufficient to cover that class fully. In such a case, oversight by the court is necessary to assure an equitable distribution of available assets." *Id.*

The facts in *Martinez* are dramatically and substantially different from those in the present case. There is no "siege of tort claimants" that threaten the debtor's estate (although there are substantial claims against it), and none of the objectors has offered a theory pursuant to which it would have a claim against the AAIC policy.[1] Thus, even if the court were to adopt the holding in *Martinez* and bring the insurance policy proceeds into the bankruptcy estate, the objectors would not be within the class of creditors that would share in those funds.

The testimony of the Trustee satisfied the court that she has exercised sound business judgment in evaluating the proposed compromise and settlement. She testified that she had discussed the counterclaim filed by the Debtor with prior counsel and determined that it has no value to the estate. She conducted a Rule 2004 examination of the Debtor and reviewed the

---

[1] In fact, PLIC and MLIC have positively admitted that there is no insurance coverage with respect to their claims. *See* Rule 26(a)(1) Disclosures of PLIC and MLIC, attached to the Trustee's Response to PMB's Post-Hearing Memorandum as Exhibit 2.

pleadings in the *Wood Gutmann & Bogart* litigation and the insurance policy with her counsel to understand the potential liability of the Debtor in that litigation.  She pointed out that other litigation against the Debtor has been settled with proceeds from the same insurance policy (and without objection).  The Trustee emphasized that the proposed settlement includes a significant benefit to the estate – the withdrawal of the $7,250,000 proof of claim of Wood Gutmann & Bogart and the other plaintiffs.  Finally, she testified that there must still be a good faith hearing in the court where the *Wood Gutmann & Bogart* litigation is pending, providing yet another assurance to that if approved by that court, the Trustee's request for approval by this court represents the exercise of sound business judgment and is in the best interest of the estate and creditors of the estate.

From all of the foregoing, the court concludes that the objections of Pacific Mercantile Bank, Pacific Life Insurance Company, and Minnesota Life Insurance Company should be overruled, and the motion of the Trustee should be and is hereby **GRANTED**.


cc:     Debtor
        Attorney for Debtor
        Chapter 7 Trustee
        Attorney for Chapter 7 Trustee
        United States Trustee
        Matrix